RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 12 / 19 / 13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| THOMAS E. ROQUE | CIVIL ACTIO NO. 12-3149 |
| VERSUS | JUDGE TRIMBLE |
| NATCHITOCHES PARISH SCHOOL BOARD | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

Before the court is a motion for summary judgment filed by defendant Natchitoches Parish School Board ("School Board") in the above-captioned race-based employment discrimination suit.[1] All briefs have now been received and reviewed by the court and, thus, we find this motion ripe for decision at this time. For the reasons expressed herein below, it is the finding of the court that the School Board's motion should be GRANTED.

I. RELEVANT FACTS AND PROCEDURAL HISTORY

Plaintiff Thomas E. Roque ("Plaintiff") was a candidate for the position of Superintendent of Schools for Natchitoches Parish ("Superintendent") following the retirement of Dr. Elwanda Murphy from that post effective June 30, 2009.[2] The School Board received nine (9) applications for the position after posting the opening in the local newspaper. The deadline specified in that advertisement was March 18, 2009. The following nine (9) persons applied for the position:

1. Dr. Alvin Brossette – a black male
2. Dr. Lawrence Garrison – a white male

---

[1] R. 10.
[2] R. 10-1 at p. 2.

    3. Mr. Eddie Jones – a white male
    4. Dr. Deidre Ledbetter – a black female
    5. Mr. Anthony Price – a black male
    6. Dr. Mary Robinson – a black female
    7. Mr. Thomas Roque – a black male
    8. Ms. Phyllis Thomas – a white female
    9. Dr. Maury Wills – a black male.[3]

Mr. Price withdrew his name from consideration after accepting another position.[4] Following the April 9, 2009 meeting, the School Board voted to re-open the application period for the Superintendent position for two (2) additional weeks.[5] As a result of this extended application period, the School Board received eight (8) more applicants for the position:

    1. Mr. Hamilton Brock – a black male
    2. Dr. Derwood Duke – a white male
    3. Ms. Ruth Kay – a white female
    4. Dr. James Loftin – a black male
    5. Ms. Ashley McDaniel – a white female
    6. Ms. Margaret McNeely – a white female
    7. Dr. Daniel Rawls – a white male
    8. Dr. Shannon Verrett – a black male.[6]

During the May 14, 2009 meeting, the School Board voted to interview all qualified applicants during the period of May 25 – 27, 2009.[7] Ms. McDaniel withdrew her name from consideration before interviews were conducted.[8]

After interviews were conducted and background checks completed, the School Board met on May 29, 2009 to make its selection from among the remaining applicants. Dr. Derwood

---

[3] Id.
[4] Id.
[5] R. 10-1 at p. 3.
[6] Id.
[7] Id.
[8] Id.

Duke received the majority of the votes and was appointed Superintendent for a two-year term, beginning July 1, 2009.[9]

Plaintiff's complaint alleges that the decision of the School Board was the product of race-based discrimination in violation of Title VII of the Civil Rights Act of 1964.[10] Specifically, plaintiff alleges that he was denied the position of Superintendent because of his identity as a black male.[11] Plaintiff further alleges that, although he possessed "outstanding and exemplary qualifications for the position," a white male, Dr. Derwood Duke, was chosen based on race.[12]

Plaintiff filed a claim with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination by the School Board and was issued a right to sue letter on September 25, 2012.[13] Plaintiff filed the instant suit on December 21, 2012 and is seeking instatement as the Superintendent, as well as past lost earnings, compensatory damages, employment benefits, and attorney fees.[14]

## II.    APPLICABLE STANDARD

Fed. R. Civ. P. 56(a) provides that summary judgment shall be granted when the movant shows the absence of any genuine dispute as to any material fact and, for that reason, shows that he is entitled to judgment as a matter of law. The movant must demonstrate the absence of any genuine dispute as to any material fact by citing to particular parts of materials in the

---

[9] R. 10-1 at p. 4.
[10] 42 U.S.C. § 2000e, et seq.
[11] R. 1 at ¶ IV.
[12] Id. at ¶ VI.
[13] Id. at ¶¶ VIII – IX.
[14] Id. at ¶ XI.

record, including depositions, documents and affidavits.[15] The movant may demonstrate entitlement to judgment as a matter of law by pointing out the nonmoving party's inability to produce evidence which, when taken as true for the purposes of the motion, would provide a legally sufficient basis upon which a reasonable jury might base a judgment in the nonmoving party's favor.[16]

Once a motion for summary judgment is made and properly supported, the burden shifts to the nonmoving party to come forward with evidence which demonstrates the essential elements of his claims.[17] In so doing, the nomoving party establishes the existence of a genuine issue of material fact for trial. The nonmoving party must show that the evidence, when viewed in the light most favorable to him, is sufficient to enable a reasonable jury to render a verdict in his favor.[18] A party whose claims are challenged by a motion for summary judgment may not rest on the allegations of the complaint and must articulate specific factual allegations which meet his burden of proof.[19]

If the nonmoving party meets his burden of proof, summary judgment is inappropriate and the claims must be preserved for further proceedings. If, on the other hand, the nonmoving party does not meet his burden, the court must grant summary judgment in recognition of the implausibility of the claims at issue.[20]

---

[15] Fed. R. Civ. P. 56(c)(1)(A).
[16] Celotex Corp v. Catrett, 477 U.S. 317, 2553 – 54 (1986); Duffy v. Leading Edge Products, Inc., 44 F.3d 308, 312 (5th Cir. 1995); Shotak v. Tenneco Resins, Inc., 953 F.2d 909, 913 (5th Cir. 1992), cert. denied 506 U.S. 832 (1992).
[17] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Little v. Liquid Air Corp., 37 F.3d 1069 (5th Cir. 1994).
[18] Celotex, 477 U.S. at 325.
[19] Id.
[20] Id. at 322.

All evidence submitted to the court in support of or in opposition to a motion for summary judgment must be of the sort which would be admissible at the trial of the matter.[21] "Metaphysical doubt" as to the existence of a genuine issue for trial is insufficient, as are "unsubstantiated assertions" and "conclusory allegations[.]"[22] The court will construe all evidence in the light most favorable to the nonmoving party, but will not infer the existence of evidence not presented.[23]

### III. ANALYSIS

#### A. Title VII Framework

Title VII of the Civil Rights Act of 1964 provides, in part, that "[i]t shall be an unlawful employment practice for an employer to

> fail or refuse to hire…any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin…[.][24]

Claims asserted under Title VII may be supported with direct or circumstantial evidence.[25] "Direct" evidence is evidence which, if believed, proves the existence of unlawful discrimination without the need for inference or presumption.[26] Where, as in the instant case, plaintiff can offer no direct evidence of discrimination, the court's analysis proceeds according

---

[21] Fed. R. Civ. P. 56(c)(2); Salas v. Carptener, 980 F.2d 299, 305 (5th Cir. 1992) quoting Broadway v. City of Montgomery, 530 F.2d 657, 661 (5th Cir. 1976).
[22] Little, 37 F.3d at 1075, citing Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), Lujan v. National Wildlife Federation, 497 U.S. 871, 871-73 (1986); Hopper v. Frank, 16 F.3d 92 (5th Cir. 1994).
[23] Lujan, 497 U.S. at 888.
[24] 42 U.S.C.A. § 2000e – 2(a)(1).
[25] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Portis v. First Nat. Bank of New Albany, Miss., 34 F.3d 325 (5th Cir. 1994).
[26] Wallace v. Methodist Hosp. System, 271 F.3d 212, 219 (5th Cir. 2001); Portis, 34 F.3d at 329 quoting Brown v. East Miss. Elec. Power Ass'n., 989 F.2d 858, 861 (5th Cir. 1993).

to the burden-shifting framework established by the U.S. Supreme Court in the seminal case of McDonnell Douglas Corp. v. Green.[27]

Under the McDonnell Douglas framework, the initial burden lies with the plaintiff to establish a prima facie case of unlawful discrimination by demonstrating that (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) he was qualified for the position he sought; and (4) a person outside of the protected class was chosen for the position over plaintiff.[28]

If the plaintiff is able to demonstrate all four (4) elements of the prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment decision.[29] If the employer successfully articulates a legitimate, non-discriminatory reason for its decision, the burden returns to the plaintiff to offer evidence that the reason given by the employer is merely pretext for unlawful discrimination or that the employer's reason is only one of the motivating factors for the employer's reason and that another motivating factor is plaintiff's protected characteristic.[30]

Once a plaintiff has demonstrated "mixed motive" on the part of the employer, the employer may show that the same adverse employment decision would have been made against plaintiff regardless of any discriminatory motive.[31] While a successful showing of the inevitability of the adverse employment decision does not absolve an employer who was at least partially motivated by unlawful discrimination of liability, a court will limit its award to

---

[27] Turner v. Baylor Richardson Medical Center, 476 F.3d 337, 344 (5th Cir. 2007) (internal citations omitted).
[28] McDonnell Douglas, 411 U.S. 792 at 802; Black v. Pan American Laboratories, LLC, 646 F.3d 254, 259 quoting Valdez v. San Antonio Chamber of Commerce, 974 F.2d 592, 596 (5th Cir. 1992).
[29] McDonnell Douglas, 411 U.S. at 802-03.
[30] Id. at 804-05; Autry v. Fort Bend Independent School Dist., 704 F.3d 344, 346-47 (5th Cir. 2013) citing Vaughn v. Woodforest Bank, 665 F.3d 632, 636 (5th Cir. 2011).
[31] University of Texas Southwestern Medical Center v. Nassar, ___ U.S. ___, 133 S.Ct. 2517 (2013).

that of declaratory relief, injunctive relief, attorney fees and specified costs, but will not award damages, or order reinstatement, payment, promotion or hiring.[32]

B. Defendant's Motion

Defendant's motion assumes for its purposes that plaintiff can demonstrate the requisite prima facie case of discrimination.[33] The court agrees. Plaintiff is an African-American male who applied for, but was not selected for, the post of Superintendent. Defendant does not dispute that plaintiff was "qualified," but instead argues that he was not the most qualified. Thus, for purposes of the McDonnell Douglas analysis, we find that plaintiff has carried his prima facie burden of proof, effectively shifting the burden to defendant to articulate a legitimate, non-discriminatory reason for its decision to hire Dr. Duke rather than plaintiff.

The School Board asserts that its decision to hire Dr. Duke was based solely on Dr. Duke's superior qualifications for the job.[34] The School Board points out that, while both plaintiff and Duke were among the five (5) finalists considered for the job, Dr. Duke was the only finalist with a doctoral degree and the only finalist with previous experience as a Superintendent of Schools, having served in such capacity in Winn Parish for eight (8) years.[35] The School Board also highlights Dr. Duke's extensive list of professional board and leadership positions, which the court will not repeat here.[36]

Defendant's motion argues a marked distinction between the aforementioned qualifications of Dr. Duke and those of plaintiff, while not describing plaintiff's qualifications in

---

[32] 42 U.S.C.A. § 2000e – 2(m); Rachid v. Jack In The Box, Inc., 376 F.3d 305 at 312, n. 9.
[33] R. 10-1 at p. 9.
[34] Id. at pp. 9-10.
[35] Id. at pp. 9-10.
[36] Id. at p. 10.

any useful fashion.  Plaintiff's resume shows, however, that he served as Assistant Superintendent of Administration for the Rapides Parish School Board at the time of his application with Natchitoches Parish and possessed extensive background in school administration, classroom instruction and, like Dr. Duke, served on many boards, committees and advisory positions.[37]

Our review of the resumes at issue leads us to find that the School Board has successfully offered a legitimate, non-discriminatory reason for its decision to hire Dr. Duke, rather than plaintiff.  While both candidates boast many good qualifications, defendant correctly observes that Dr. Duke possessed at least two (2) attributes that plaintiff did not: (1) he had obtained a doctoral degree, while plaintiff had yet to complete his doctoral degree program; and (2) he had previously served as Superintendent of Schools in another parish, while plaintiff had only served as an Assistant Superintendent for Administration.[38]  Based on our finding that, though both candidates were qualified, Dr. Duke was more qualified, the court also finds that the School Board has offered a legitimate, non-discriminatory reason for its decision sufficient to shift the burden, again, to plaintiff.  Plaintiff's burden now becomes the demonstration of pretext or, at least, a mixed motive on the part of the School Board.

Plaintiff alleges that the School Board's proffered excuse for the selection of Dr. Duke is merely pretext for impermissible racial discrimination.  Plaintiff asserts that Ms. Hildebrand, the Chairperson of the Personnel or Search Committee,[39] made the comment to board members Ralph Wilson and Joella Wilson that she "[didn't] feel that the community was ready for a

---

[37] R. 10-8 at pp. 38-41.
[38] R. 10-6 at pp. 50-53; Id.
[39] Deposition of Hildebrand (R. 15-2, pp. 17-27) at 12:7 – 13:4; R. 15 at p. 7.

minority Superintendent."[40]  Plaintiff also points out that that Hildebrand made a motion, seconded by another board member, to reopen the application deadline for an additional two (2) weeks after the first application period produced a field of predominantly African-American candidates.[41]

Plaintiff's case centers on two pieces of circumstantial evidence: (1) the alleged remark of Ms. Hildebrand to two African-American board members; and (2) Ms. Hildebrand's motion to reopen the application process.  Defendant characterizes the alleged comment by Ms. Hildebrand and a "stray remark" under applicable Fifth Circuit jurisprudence.

In cases where a single remark is offered as additional evidence of pretext, the court must determine whether or not the statement at issue evidences discriminatory animus and whether the speaker is either primarily responsible for the challenged employment action or exercises influence or leverage over the relevant decision maker.[42]  While neither party addressed the issue, the court points out that Hildebrand's alleged statement does not constitute direct evidence and, therefore, four-part analysis under Brown v. CSC Logic, Inc. is not appropriate.[43]

The court has reviewed the evidence offered by plaintiff and finds that plaintiff fails to offer sufficient evidence of pretext.  Assuming for the purpose of our analysis that the alleged statement by Hildebrand evidences discriminatory animus, we find that plaintiff fails to show that Hildebrand was the primary decision maker or exercised influence or leverage over the relevant decision maker.  Although the record suggests that she served as Chairperson of the

---

[40] Deposition of Ralph Wilson (R. 15-1) at 24:7 – 20; Deposition of Joella Wilson (R. 15-2, pp. 1-16) at 12:16 – 13:8.
[41] R. 15 at p. 3.
[42] Laxton v. Gap, Inc., 333 F.3d 572, 583 (5th Cir. 2003) citing Russell v. McKinney Hosp. Venture, 235 F.3d 219, 226 (5th Cir. 2000).
[43] 82 F.3d 651 (5th Cir. 1996); Reed v. Neopost USA, Inc., 701 F.3d 434, 441 (5th Cir. 2012).

committee responsible for advertising the position and presenting the applicants to the board at large, Hildebrand was but one of eleven (11) board members responsible for the vote which elected Dr. Duke. Plaintiff offers no evidence that Hildebrand "exercised influence or leverage over" the remaining ten (10) School Board members. The record shows that plaintiff's application was presented to the board and that plaintiff was among five (5) finalists for the position, demonstrating that he was carefully considered. Thus, plaintiff makes no showing that Ms. Hildebrand's position as committee chairperson deprived him of consideration.

We note that additional testimony from Mr. Ralph Wilson and Mr. Harry Graham that they heard from others that Ms. Hildebrand had stated at other times that she didn't feel the community was ready for a minority Superintendent does not form part of the basis for this court's ruling, as such evidence is hearsay under Fed. R. Evid. 802 and, over objection at trial, will not be admitted.[44] Therefore, such evidence fails as a demonstration of leverage or undue influence.

To the extent that plaintiff asserts that, but for Ms. Hildebrand's motion to reopen the application process, he would have clearly been the most qualified candidate and likely elected, the court disagrees. First, Ms. Hildebrand's motion to reopen the application process has not been demonstrated to be the factor which prevented plaintiff's election. Plaintiff offers no evidence that he was the most qualified from among the first group of applicants.

Similarly, the court finds no evidence that, had a vote been taken from among the first group of applicants, plaintiff would have won. To the contrary, testimony by Mr. Graham reveals that plaintiff's stated position that he would certainly have been elected as the most

---

[44] R. 15-1 at 24:21 – 25:8; R. 15-2 at 14:2 – 7.

qualified candidate from among the first group of applicants is merely conjecture. Mr. Graham, to the court's dismay, testified that he had no explanation as to why he voted for Mr. Verrett and, instead, arbitrarily chose Mr. Verrett from among the African-American candidates. When asked if he voted for Mr. Verrett because he was African-American, he responded, "I could have, you know."[45]

Given plaintiff's failure to carry his burden of demonstrating evidence of pretext in this case, the court finds that plaintiff's Title VII claim against the School Board should be denied and dismissed with prejudice. Although neither party addresses plaintiff's remaining Louisiana law claims, our analysis above applied equally to race-based employment discrimination claims under state law and mandates, therefore, the dismissal of these additional claims as well.[46]

IV. CONCLUSION

The court has carefully reviewed defendant's motion, as well as all supporting and opposing briefs and evidence. As expressed above, we find that plaintiff fails to carry his burden of demonstrating evidence of pretext as required under the applicable McDonnell Douglas burden-shifting framework. Accordingly, we find that plaintiff's Title VII, federal and state constitutional and Louisiana law race discrimination claims fail as a matter of law and will, therefore, grant defendant's motion for summary judgment in this matter by separate judgment to be issued this day.

Alexandria, Louisiana
December 19, 2013.

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

---

[45] R. 15-2 at 16:5 – 17:8.
[46] Turner v. Kansas City Southern Ry. Co., 675 F.3d 887, n. 2 (5th Cir. 2012) (internal citations omitted).

11